### PETZE v. MORSE DRY DOCK & REPAIR CO.

(Supreme Court, Appellate Division, Second Department. March 6, 1908.)

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—INCOMPLETE CONTRACT.

Plaintiff and defendant made "memoranda of points of agreement to be made between" them, stating that plaintiff was to be employed as chief clerk for a certain time, at a certain sum per annum, "and five per cent.

of the net distributable profits, which five per cent. profits will be guaranteed to be not less than" a certain sum per annum; "the method of accounting to determine the net distributable profits is to be agreed upon later." At the time of making such memoranda plaintiff was in the employ of defendant, and continued in such employment for about a year, when on their inability to agree defendant discharged plaintiff. *Held*, that the contract of employment was incomplete, and plaintiff was not entitled to recover for a wrongful discharge, and that defendant's good faith in refusing to agree was immaterial.

Hooker, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Henry H. Petze against the Morse Dry Dock & Repair Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

David McClure, for appellant.

William S. Maddox, for respondent.

MILLER, J. This is an action for wrongful discharge from employment. The Morse Iron Works & Dry Dock Company went into bankruptcy, and the defendant took over its property in August, 1904. The plaintiff had been in the employ of said company, was one of the trustees in bankruptcy, and continued in the employ of the defendant. On September 20, 1904, the following memorandum was signed by the plaintiff and defendant, viz.:

"September 20th, 1904.

"Memoranda of Points of Agreement to be Made Between Morse Dry Dock & Repair Company and H. H. Petze.

"H. H. P. to be employed as chief clerk and auditor for a term of five years and three months from October 1st, 1904, to December 31st, 1909. Compensation to be $3,000 per annum and five per cent. of the net distributable profits, which five per cent. profits will be guaranteed to be not less than $600 per annum, and H. H. P. may draw $300 per month. The method of accounting to determine the net distributable profits is to be agreed upon later when the company's accounts have developed for a better understanding. H. H. P. to devote all his time and energy solely for the interest of M. D. D. & R. Co.

"[Sgd.]          Morse Dry Dock & Repair Company,
                        "Daniel J. Leary, President.
"H. H. Petze.          J. P. Caddagan, Treasurer."

Some time in November, 1905, the question of the method of accounting to determine the net distributable profits was taken up, the parties were unable to reach an agreement, and the plaintiff's employment was terminated. The jury could have found that the failure of the parties to agree was due to the bad faith and insistence of the defendant upon unreasonable conditions. It is clear that by the expression "method of accounting to determine the net distributable profits" the parties meant more than "system of making up the accounts"; they had in mind that they were to agree upon the different items to be taken into account; and they undertook subsequently to agree upon such items. The question submitted to the jury on this branch of the case was whether the failure to agree was the fault of the plaintiff or of the defendant.

An interesting question respecting the measure of damages is presented, but I shall not discuss it for the reason that I have reached the conclusion that the plaintiff was not entitled to recover.

The parties did not understand that the memorandum of September 20th expressed a complete contract; they styled it "Memoranda of Points of Agreement to be Made," and they reserved an important element for future agreement. The trial court charged the jury that, when the plaintiff entered on the employment under the memorandum, it became a contract; the learned counsel for the respondent argues that, as the parties contemplated partial performance before the method of determining distributable profits should be agreed upon, they deemed that provision of the contract immaterial, or at any rate one which the plaintiff could waive; that the defendant agreed to pay at least $3,600 per year; and that the plaintiff alone was interested in the question whether he should get anything in excess of that sum. I think this overlooks the nature of the relation between employer and employé. The employer might well desire to stimulate the interest of his employé by giving the latter a share of the profits. He certainly would not want a dissatisfied employé, as would likely be the case if the provision for extra compensation failed because of the inability of the parties to agree. The agreement in this case to pay $3,000 and 5 per cent. of the net distributable profits was to be made when the parties should agree upon the method of determining such profits. The 5 per cent. of profits was as much a part of the agreed compensation as the $3,000, and the contract was not complete so long as the basis of determining that was a subject of negotiation. This provision of the contract was not divisible. The agreement was not to pay $3,000 or $3,600 at all events and more if the parties could agree on a method of compensation. If the parties had contemplated that the agreement should be complete before the term of service was to begin, it might be urged that by suffering the plaintiff to begin performance the parties treated the contract as binding so far as it was definite and certain, and waived the making of the further agreement in reference to the computation of profits, but they contemplated that the employment should begin before a definite and complete contract was made—the plaintiff was already in the defendant's service—and the plaintiff took the risk of being able to agree upon the point left open. By doing what both parties contemplated should be done, nothing was waived, and the plaintiff did not get the right to waive what the defendant had a right to insist should be agreed upon. Continuing in the employment was not a part performance of a contract, for none had been made. If the parties subsequently agreed upon the terms left open, the agreement would relate back to the date mentioned in the memorandum, i. e., October 1, 1904. If they failed to agree, the plaintiff could recover for what he had done on a quantum meruit, and the employment must be deemed to have commenced with a full understanding on the part of both parties that that was the situation. They evidently expected that they could agree, and

were willing to take that risk. On that assumption the plaintiff was paid $300 per month. But if I am right he was not limited to that. When the contract failed of making he could have recovered whatever he could show his services had been worth.

I confess I have had some difficulty on the point whether, after having induced the plaintiff to continue in its service, the defendant was not bound in law as in good conscience to make an honest effort to agree; for I think the jury was justified in finding that the defendant did not act in good faith in that regard. It is undoubtedly the rule that an agreement to agree is not enforceable. Brown v. The New York Central R. R. Co., 44 N. Y. 79; Mayer v. McCreery, 119 N. Y. 434, 23 N. E. 1045. On the one hand, there is nothing of which to decree specific performance, on the other, no basis for damages. There is no contract so long as any essential element is open to negotiation. Hence, the good faith of the parties in conducting the negotiations is immaterial. It may be thought that Smith v. United Traction & Electric Co., 49 App. Div. 641, 63 N. Y. Supp. 665, affirmed 168 N. Y. 597, 61 N. E. 1134, is an authority contra, but the decision in that case was for the defendant, so the point was not necessarily involved. In Mayer v. McCreery, supra, the court, per Peckham, J., say:

"We do not think it is a case where the plaintiff might waive the condition for making the alterations and demand a lease without such agreement having been arrived at. If they are separable contracts, and if the alterations to be made were to be agreed upon solely for the benefit of the plaintiff, the right to waive such alterations might possibly exist, and his claim to exact performance of the agreement for the lease might be a valid one. But we do not think such is the case. The defendant has agreed that he would give a lease, provided he and the plaintiff should subsequently agree upon plans for alterations to be made. But he was under no obligation to agree upon such plans. On the contrary he might arbitrarily refuse to agree upon them, and his refusal would be a sufficient answer to the demand for the execution of the lease. It would be no answer for the plaintiff to show that he had offered to agree on plans which were reasonable and proper, but that the defendant had, without reason, refused to agree upon them. The future agreement upon plans was not of such a nature that the plaintiff would have a right to ask that the defendant should specifically perform, upon proof that the plaintiff had offered plans which were reasonable in themselves and which the defendant ought to have agreed upon."

Suppose the memorandum had provided that the plaintiff should enter upon the employment for the period of five years at a compensation to be agreed upon after the expiration of a year, would it not be clear that the contract was incomplete, and that in default of the subsequent agreement the plaintiff would be limited to a recovery for the value of the services actually performed? The parties are at liberty to make such an agreement as they please, and even in the case of an arbitrary refusal to agree the court could not say what sort of an agreement they should have made, and upon that basis award damages. The case is no different because the minimum to be paid had been agreed upon. Both were interested in having the method of determining the maximum amount agreed upon. The defendant was particularly interested in having its employé satisfied. Both understood that the contract was incomplete, as the memorandum shows.

The plaintiff was willing to continue in the employment and take the risk of being able to agree subsequently upon a complete contract, and he cannot now recover for breach of a contract that was never made, on the theory that some of its terms had been agreed upon. It is unnecessary to discuss the cases cited by the respondent on this point. They simply hold that where the minds of the parties have met on every essential element of the contract, and nothing remains for future negotiation, the mere fact that they contemplate a more formal writing does not prevent the agreement as made being a contract.

The judgment should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur except HOOKER, J., who dissents.