St. Regis Paper Company, Respondent, *v.* Hubbs & Hastings Paper Company, Appellant.

Fourth Department, May 10, 1922.

Principal and agent — commissions — action for goods sold and delivered — counterclaim for commissions by defendant — question for jury whether contracts by plaintiff with defendant to furnish paper to defendant for three newspapers constituted defendant broker — verdict that defendant acted as broker sustained by evidence — clause in contracts that price should be fixed every quarter by mutual consent or contract should terminate — plaintiff failed to fix price at end of fourth quarter for succeeding quarter — good faith in attempting to fix price necessary — question of good faith properly submitted to jury — verdict on counterclaim sustained by evidence.

In an action for paper sold and delivered, the defendant offered no defense but interposed a counterclaim for commissions, claiming that it was not a purchaser of the paper but simply acted as broker in furnishing the paper to three newspapers. The contracts between the plaintiff and defendant on their face were contracts of sale but the correspondence between the parties referred to the defendant's commissions and other matters indicating agency. Each contract named the defendant as buyer but with a bracketed phrase following its name stating the newspaper for which the contract was made and the price in each contract was the price previously fixed between the defendant and the newspaper upon the authority of the plaintiff, less two per cent, which was the amount of the defendant's commission agreed upon between the plaintiff and the defendant.

*Held*, that a question of fact was presented for the jury and a finding that the defendant acted as a broker was fully sustained by the evidence.

Each contract contained a provision that the price after the first three months should be fixed quarterly by mutual consent and, in case there should be a failure to fix the price for any quarter before the expiration of the preceding three months, the contract should terminate. The plaintiff failed to fix the price at the end of the fourth quarter of the duration of the contracts for the following quarter. It was shown that the plaintiff, without cause, declined to furnish the newspapers with any more paper through the defendant for the balance of the period covered by the contracts, told the publishers that they would have to deal through a New York agent, offered them paper at a certain

price through the New York agent provided the publishers would obtain a release from the defendant, and when the defendant refused to sign a release, withdrew the offer made through the New York agent and proposed a price to the defendant higher than that previously offered through the New York agent, concluding the offer with a misleading, if not actually false, statement as to the general market price of paper.

*Held*, that the court properly charged the jury that if they found that the plaintiff did not act in good faith and honestly try to fix the price for the quarter in question, they should find a verdict for the defendant on the counterclaim and also that such a verdict so found was not against the weight of the evidence.

Kruse, P. J., dissents, with memorandum.

Appeal by the defendant, Hubbs & Hastings Paper Company, from an order of the Supreme Court, made at the Jefferson Trial Term and entered in the office of the clerk of the county of Jefferson on the 11th day of December, 1920, granting plaintiff's motion to set aside the verdict of the jury in favor of the plaintiff, upon the ground that the verdict was for insufficient damages, and upon exceptions taken by the plaintiff.

*Fred A. Robbins*, for the appellant.

*Henry Purcell* and *Francis E. Cullen*, for the respondent.

Sears, J.:

In an action to recover for goods sold and delivered, to which cause of action no defense was offered, the defendant has interposed a counterclaim out of which grows the controversy now before the court. The jury by its verdict allowed the defendant's counterclaim in the sum of $22,050, deducted it from the amount concededly owing from the defendant to the plaintiff, viz., $46,425.20, and found a verdict for the plaintiff for $24,375.20. The trial justice thereafter granted a motion for a new trial on the ground that the defendant had failed to establish the cause of action set forth as a counterclaim.

The plaintiff was a manufacturer of paper in Jefferson county, and the defendant was a paper dealer, both jobber and broker, in Rochester, N. Y. It is the gist of the defendant's claim that in the transactions in question the defendant was acting as a broker for the plaintiff and as such secured for the plaintiff three separate contracts, one with the publisher of the Rochester *Democrat and Chronicle*, one with the publisher of the Rochester *Times-Union*, and one with the publisher of the Syracuse *Journal* for the purchase from the plaintiff by the publishers of these newspapers respectively of large quantities of paper to be supplied for the use of the newspapers during the whole or parts of the years 1919 and 1920, and that as such broker the defendant earned commissions to the amount of the counterclaim allowed by the jury.

It is the plaintiff's claim that the relation between the parties was not one of principal and broker, but of seller and purchaser, and that consequently no claim for commissions in favor of the defendant can be sustained, and that even if the relation was as defendant claims no commissions were earned beyond those already paid.

The trial court left the question to the jury as to whether the defendant was a broker in the transactions and there was sufficient evidence to sustain the determination of the jury to the effect that the defendant was acting as a broker. Although contracts were entered into between the plaintiff and the defendant which on their face are contracts of purchase and sale merely, yet when surrounding circumstances are considered, the verdict of the jury was warranted. In the correspondence leading up to the contracts, the defendant was styled by the plaintiff its " representative " and its " agency " was referred to and the defendant's " commission " was determined. Even when the first form of contract between the plaintiff and defendant was sent to the defendant, the plaintiff's letter of transmission referred to the forms as covering the sale to the *Democrat and Chronicle,* and after the contract was executed, both parties in their letters still made reference to defendant's " commissions." Each of the three contracts between the defendant and the plaintiff named the defendant as the buyer, but with a bracketed phrase following the defendant's name stating for what particular newspaper publisher the contract was made, for example: " Buyer — Hubbs & Hastings Paper Co. (For the Rochester Times-Union)." A clause in each contract made provision for exemption from liability in case of default resulting from strikes or other causes beyond the defaulting party's control, and there was a rider attached to each contract as follows: " It is understood that the conditions specified in the foregoing paragraph entitled ' Remarks ' in favor of both manufacturer and purchaser, run thru to an original contract between the Hubbs and Hastings Paper Co. and [here occurs the name of the publisher of the particular paper] for whose use this contract is placed, and that the Publisher above named and the St. Regis Paper Co. are the contracting parties as to said conditions."

The price in each contract between the plaintiff and the defendant was the price which had previously been fixed between the defendant and the newspaper publisher upon the authority of the plaintiff, less two per cent, which was the amount of the defendant's commission previously agreed upon between the parties hereto. About the same time that each of these three contracts between the parties hereto was entered into, the defendant in turn executed a contract with the respective newspaper publisher correspondingly

identical in form with the contract between the plaintiff and the defendant for the paper supply for that newspaper, except that the price named in the contract between the defendant and the newspaper publisher was the price which had been fixed by agreement between the parties to this action (without deduction of the commission), plus such sum for freight, cartage, storage and insurance as the defendant had agreed upon with the respective purchaser, which charges for freight, etc., were to be paid, according to the agreement between the defendant and the publisher, by the defendant, and then absorbed by the publisher in the price that such publisher was to pay the defendant for the paper. Under these circumstances, a question of fact arose (*Lamb* v. *Norcross Brothers Co.*, 208 N. Y. 427), and the evidence fully sustained the jury's verdict.

The more serious question in this case, and a very troublesome one, relates to the interpretation of the contracts, assuming, as the jury found, that the transactions were sales by the plaintiff to the newspaper publisher in each case, and that the defendant's relation to the matter was that of broker only. Each of the contracts was for a specified amount of paper (afterwards slightly increased by agreement), to be delivered over a period of more than a year, and each contained a clause similar to the following, which is taken from the contract between the parties hereto for the *Democrat and Chronicle* paper:

" Price — The price for the first three months ending March 31st, 1919, shall be three dollars and 77/100 per hundred pounds, * * * and the price for the balance of the year shall be fixed quarterly by mutual consent. In the event that the parties to this agreement shall fail to arrange a price for any quarter before the expiration of the preceding three months, this contract in so far as it pertains to delivery over the unexpired period, shall terminate."

The plaintiff contended and now contends, and the trial justice in granting the motion for a new trial held, that the contract was a binding agreement for only three months and that after the first three months it was entirely executory, indefinite and unenforcible, and consequently that no commissions were earned in connection with the original contract except in relation to the first three months' business, which is not involved here; in other words, that the minds of the plaintiff and the newspaper publishers did not meet when the contract was originally made as to anything except as to deliveries to be made during the first three months. The trial justice in granting the motion for a new trial wrote: " Beyond that, [the period of the first three months] defendant's right as broker was ' like the next cast of a fisherman's net,' it involved a possibility

but no actual or potential interest. Vann, J., in *Albany County Savings Bank* v. *McCarty* (149 N. Y. 85)." Prices were duly agreed to quarterly for deliveries throughout the year 1919 and the question arose as to the transactions occurring toward the end of the last quarter of 1919.

Upon the trial the judge instructed the jury that the second question in the case was " whether the St. Regis Paper Company acted in good faith and honestly tried to fix the price during the last quarter of 1919 for the first quarter of 1920."

The charge continued: " If they acted fairly and honestly, did what they could to bring about the fixing of prices, then they observed all the duty which they owed under the implied terms of their contract with the defendant and they may not be held.   On the other hand, if they did not so act, then you may find a verdict on the counterclaim against the St. Regis Paper Company."   The jury under these instructions found that the plaintiff did not act in good faith and honestly in trying to fix the price during the last quarter of 1919 for the first quarter of 1920.   If this charge was proper, there was ample evidence to justify the verdict.   It was shown that the plaintiff, without cause, declined to furnish the newspapers with any more paper through the defendant's agency for the balance of the periods covered by the respective contracts, told the publishers that they would have to deal through a New York agent, offered a supply of paper to the newspapers through the New York agent at a certain price upon condition that the publishers obtain a release from the defendant, and when the defendant refused to sign a release, withdrew the offer previously made through the New York agent, and proposed to the defendant a price about a cent per pound higher than the plaintiff had previously offered the publishers through the New York agent, concluding the offer with a misleading if not actually false statement as to the general market price of the commodity.

If the contracts had fixed no price for any period whatever but had left that subject open for further negotiation, the contracts unquestionably would have been indefinite and unenforcible. They would have been mere agreements to agree and without legal significance.   ( *United Press* v. *New York Press Co.*, 164 N. Y. 413; *Mayer* v. *McCreery*, 119 id. 434; *Sabarsky* v. *Drew*, 176 App. Div. 80; affd., 226 N. Y. 557; *Varney* v. *Ditmars*, 217 id. 223; *Petze* v. *Morse Dry Dock & Repair Co.*, 125 App. Div. 267; affd., 195 N. Y. 584.)

When persons are in the position of strangers to one another negotiations do not imply good faith.   An individual in such position may act as shabbily as his nature dictates in attempting a

26

deal with another, and no one has a right to complain. Can the situation in the case before us be distinguished from such a situation? The only difference lies in the fact that, between the plaintiff and each publisher at the time of the failure to agree, there was in existence a valid, subsisting contract, which included provisions for deliveries during the then coming months, terminable, to be sure, upon a *failure to agree.* As the price of each quarter was to be fixed before the end of the preceding quarter, and the contract was only to be terminated if there was a failure to agree, there was implied in each contract an obligation to attempt to agree, during the time that the contract was otherwise binding upon the plaintiff and the newspaper publisher. Agreement necessarily imports negotiation. The agreements as to price before the close of each preceding quarter had continued the original contract in force throughout 1919 and the situation at the close of 1919 was the same as at the close of the first three months. Under these circumstances as long as the contract remained binding upon the parties, an underlying implied clause requiring good faith in negotiating the price must be read into the contract.

In *Brassil* v. *Maryland Casualty Co.* (210 N. Y. 235, 241) Judge Werner, writing for the court (though in relation to a different kind of contract), said: " But there is a contractual obligation of universal force which underlies all written agreements. It is the obligation of good faith in carrying out what is written."

In *Smith* v. *United Traction & Electric Co.* (49 App. Div. 641; affd., 168 N. Y. 597, upon the opinion below) the parties entered into a contract that they were to co-operate to effect a foreclosure sale of certain railway property, and to transfer the property to some new corporation to be organized for that purpose, and the contract contained a clause that the defendant should furnish such amount of cash as might be required to purchase the property " at such price as may be hereafter mutually agreed upon by and between the parties hereto to have bid upon the same." And Mr. Justice Rumsey wrote in respect thereto: " Thus it will be seen that the contract did not require the defendant absolutely to furnish such amount of money as was necessary to bid in the property at the foreclosure sale, but such amount as should thereafter be agreed upon between the parties to the contract. It is suggested by the defendant that the contract was not a completed one, but was simply in that regard an agreement to agree upon the price, and in the absence of a final agreement as to price, no action could lie for the failure to bid the property in at a price. We think, however, that the contract should not be quite so strictly construed, but it may fairly be interpreted as calling upon each party to use reasonable and

fair efforts to agree upon a price for which the property would be bid off on the sale; and if the defendant refused to make reasonable efforts to agree, or to consult or negotiate with the plaintiff's assignors, and so refused in bad faith with the intent that it should not be put in a position to bid off the property because no price was agreed upon, such conduct would be a violation of its agreement for which it might be held liable in damages."

Although the principle thus stated was not essential to the decision in that case, it is applicable to the plaintiff's duty in this case during the time that the plaintiff was bound by contract with the newspaper publishers. In *Wood* v. *Duff-Gordon* (222 N. Y. 88) it was said: " A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed. * * * If that is so, there is a contract." (*Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Carns* v. *Bassick*, 187 App. Div. 280.) None of the cases cited by the respondent, so far as I have discovered, relates to a situation where the parties who were negotiating were bound by a subsisting valid contract to negotiate. In each case uncertainty and indefiniteness permeated the entire arrangement from its inception although in some of the cases collateral agreements existed for limited periods of time which did not, however, obviate the indefiniteness of the original instruments.

If, then, good faith was necessary, and there was a breach by the plaintiff in this respect, the defendant is entitled to commissions on the principle that the broker is not to be deprived of his commissions by the act of the principal in failing to fulfill his obligations. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Gilder* v. *Davis*, 137 id. 504; *Colvin* v. *Post Mortgage & Land Co.*, 225 id. 510.)

The case was correctly submitted to the jury and the verdict was not against the weight of the evidence.

The order should be reversed and the verdict reinstated, with costs.

All concur, except Kruse, P. J., who dissents in a memorandum.

Kruse, P. J. (dissenting):

According to allegations of defendant's answer the plaintiff agreed to supply defendant's customers with print paper in certain amounts named, at fixed prices for the first quarter of each yearly period named in the contract, and at reasonable market prices for the succeeding quarterly periods, the same to be mutually agreed upon between the parties; that the plaintiff, without reason or justification, repudiated its obligation to furnish paper for the balance of the time stated, although the customers were ready and willing to purchase the paper at any reasonable price.

If the contract between these parties could be construed to mean that in the absence of an agreement fixing the price, the paper should be supplied at its reasonable value, there would be no difficulty in holding the plaintiff liable for a failure to supply the paper, but such is not the contract.  It provides that if the parties " shall fail to arrange a price for any quarter before the expiration of the preceding three months, this contract, in so far as it pertains to delivery over the unexpired period, shall terminate."

I do not see how the effect of this provision can be overcome or avoided by the motives which may have prompted the failure of plaintiff to agree upon a price.  It had the right to increase the price even beyond what was reasonable or to sell its paper through another dealer or broker if there was no contract obligation to supply defendant beyond the quarter for which the price was fixed, and I think this is so whether the defendant acted as a broker or a jobber in the original negotiations.  The contract as finally made between the plaintiff and defendant must govern.

The plaintiff was under the same legal obligation to furnish paper to defendant as defendant was to furnish to its customers and no more.  The provisions of the contracts in that regard are precisely alike.

Order reversed and verdict of jury reinstated, with costs.