E. Minnamon and Allyn J. Minnamon, Copartners, Comprising the Firm of E. Minnamon & Son, Appellants, *v.* Lawrence J. Walsh and Herbert B. Thomas, Respondents, Impleaded with Albert J. Walsh, James J. Connaughton and James E. Malley, as Sheriff of Monroe County, Defendants, and Mayme Loghry, Intervenor.

Fourth Department, December 23, 1936.

*Franklin H. Smith,* for the appellants.

*George D. Ogden,* for the respondents.

SEARS, P. J. On the 9th day of April, 1935, the plaintiffs recovered a judgment against the defendant Lawrence J. Walsh and his wife for $1,517.51. The judgment was docketed on the day mentioned and the next day execution was issued thereon and a levy made upon certain personal property consisting of thirteen head of cattle, an automobile, a tractor and a quantity of farm tools. A few days later the defendant Albert J. Walsh served upon the sheriff a claim that he was the owner of the personal property upon which the levy had been made and another claim was filed with the sheriff by the defendant Connaughton claiming ownership of one specific cow covered by the levy. This claim of Connaughton was allowed in the judgment here under review, and no question about it is raised upon this appeal. Negotiations were started for a settlement of the judgment and on the 6th day of August, 1935, the defendants Lawrence J. Walsh and Albert J. Walsh, the plaintiff Allyn J. Minnamon, the defendant Thomas, who was acting as attorney for Lawrence J. Walsh, and Franklin H. Smith, who was acting as attorney for the plaintiffs, met in Mr. Smith's office and entered into an oral arrangement that the plaintiffs should discharge their judgment and that the plaintiffs should receive in settlement eleven head of cattle, to consist of five milking cows, three bull calves, two bred heifers and one service bull. It was further arranged at the time that the plaintiffs or one of them should go to the Walsh farm the next morning and that a division should then be made of the cattle on the farm so that the plaintiffs should have eleven head. There were at the time upon the farm fifteen head of cattle, of which at least seven were milking cows including the Connaughton cow. A release of the judgment was executed by the plaintiffs and delivered to their attorney Smith. A bill of sale to the plaintiffs was executed by Albert J. Walsh, describing the cattle to be taken in settlement as " 11 Head of Jersey Cattle consisting of 5 milking cows, 3 bull calves, 2 Bred Heifers and 1 Service Bull." This bill of sale was left with the defendant Thomas acting as attorney for defendant Walsh. Later on the sixth day of August the defendant Thomas entered into an agreement with the plaintiff Allyn Minnamon whereby for a consideration of $150 which Thomas paid to Minnamon, Minnamon agreed to sell to Thomas three head of cattle from the number to be received from the defendants Walsh which three were to be Thomas' choice of the milking cows, the choice of the bred heifers and oldest bull calf. The plaintiff Allyn Minnamon gave Thomas a receipt for $150 which was stated to be " for choice of Walsh milking cows, choice of bred heifers and oldest bull calf." On the morning of the seventh of August Thomas went to the Walsh farm

and removed three head of cattle, the number specified in his agreement with the plaintiff Allyn Minnamon and also removed one other animal which he claimed to take in consideration of the legal services which he had rendered to the defendants Walsh. A little later the same morning Mr. Allyn Minnamon went to the Walsh farm. The cows were brought up to the barn and difficulty arose in making the division of the cows, the Walshes insisting that the plaintiffs should take a seventeen-year old cow which the trial justice has found was according to the arrangement. The plaintiff Allyn Minnamon broke up the conference by declaring that the deal was off. Thus ended the transactions between the parties except that the defendants Walsh later served upon the plaintiffs a demand that they come and take possession of the cattle.

The plaintiffs brought this action demanding judgment, declaring the claim of Albert J. Walsh fraudulent and declaring the title of the property levied upon to be in Lawrence J. Walsh and the property levied upon to be subject to the lien of the plaintiffs' execution and asking for the appointment of a receiver to take possession and control of the personal property subject to the levy until the determination of issues arising in the action. The defendant Lawrence J. Walsh answered demanding specific performance of the agreement of August sixth. The defendant Albert J. Walsh answered but his answer is not included in the record. The defendant Thomas answered demanding an affirmative judgment declaring him to be the owner of the three head of cattle which were in his possession with the discharge of the levy of the sheriff in respect thereto. The judgment, so far as material here, dismissed the plaintiffs' complaint, vacated the levy of the sheriff on payment of his fees, declared the title of the three head of cattle above mentioned to be in Thomas and granted to defendant Lawrence J. Walsh specific performance including a satisfaction of the judgment upon the delivery of eight head of cattle.

The sole question before us on this appeal is as to the character of the transaction of August sixth. The defendants in their brief and upon the argument contended that there was here a firm contract of settlement which at once superseded the antecedent rights and obligations of the parties and resulted in an immediate satisfaction of the judgment and transfer of the title to the cattle. (*Moers* v. *Moers*, 229 N. Y. 294; American Law Institute, Restatement of the Law of Contracts, § 418.) The plaintiffs in their brief and upon the argument urged that the arrangement at the best was but an unsatisfied accord and that it was not executed or intended to be executed until the division of the cattle and the delivery to the plaintiffs of those to be agreed upon between

the parties, the delivery and receipt of the cattle to be a satisfaction of the antecedent judgment. If the arrangement had been for the delivery of definitely specified animals it would have been, seemingly, an accord to result in satisfaction of the judgment only upon delivery and acceptance of the cattle. (*Kromer* v. *Heim*, 75 N. Y. 574; *Reilly* v. *Barrett*, 220 id. 170; *Melzer* v. *Karanas*, 220 App. Div. 240; American Law Institute, Restatement of the Law of Contracts, § 417.) However, a determination that the arrangement was an accord would not be determinative of the defendants' right to a counterclaim for damages or for specific performance. There is substantial authority that an executory accord may be the basis of an action for specific performance. (American Law Institute, Restatement of the Law of Contracts, § 417; 3 Williston Cont. § 1845. And see *Moers* v. *Moers, supra.* But see *Rubin* v. *Siegel*, 181 App. Div. 181.)

The difficulty, however, in this case is precedent to the question of accord or settlement in satisfaction. Was there a contract for any kind of settlement or accord? Something remained to be done, even to be agreed upon, namely, the division of the cattle. There was no specification as to what cows of Walsh were to make up the five milking cows. There were more than five on the farm and in the levy, even excluding the Connaughton cow. The arrangement was not in relation to cattle generally but as to five of the Walsh cows. Which five? That was left open for agreement on August seventh. There was a failure to agree. Consequently there was no binding contract either of accord or satisfaction. (*St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 235 N. Y. 30; *Petze* v. *Morse Dry Dock & Repair Co.*, 125 App. Div. 267; affd., 195 N. Y. 584.)

If then there is no accord or contract of satisfaction shown, there is nothing on which defendants can base their defense or counterclaim (except, of course, as to the three head of cattle received by defendant Thomas). As to these cattle there is, it seems, a right to have their value credited on the previously existing judgment. (*Kromer* v. *Heim, supra.*)

The case on appeal includes only the evidence relating to the exceptions. In this state of the record, finding error, we must order a new trial.

The judgment, so far as appealed from, should be reversed on the law and a new trial granted, with costs to the appellants to abide the event.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Judgment reversed on the law and new trial granted, with costs to the appellants to abide the event.