WILLIAM A. SLATER et al., as Trustees under the Will of WILLIAM A. SLATER, Deceased, et al., Appellants-Respondents, *v.* GULF, MOBILE AND OHIO RAILROAD COMPANY et al., Respondents-Appellants.

First Department, November 13, 1951.

*Watson Washburn* of counsel (*Perkins, Malone & Washburn,* attorneys), for appellants-respondents.

*Edward K. Hanlon* and *William R. Meagher* of counsel (*Louis S. Weeks, Jr., Theodore Kiendl* and *Samuel J. Murray* with them on the brief; *Beekman & Bogue,* attorneys for Gulf, Mobile and Ohio Railroad Company; *Davis Polk Wardwell Sunderland & Kiendl,* attorneys for Chicago, Burlington & Quincy Railroad Company), for respondents-appellants.

DORE, J. Plaintiffs, trustees, and a stockholders' committee for 6% guaranteed preferred stockholders of Kansas City, St. Louis and Chicago Railroad Company (hereinafter " Kansas City ") appeal from two orders of Special Term: (1) dated April 19, 1951, denying plaintiffs' motion for summary judgment, and (2) dated April 27, 1951, granting defendants' motion for summary judgment as to the first cause of action for alleged breach of contract and judgment on the pleadings as to the second cause of action for alleged unjust enrichment, and giving leave to plaintiffs to replead the second cause of action. Defendants appeal from so much of the latter order as granted leave to serve an amended complaint as to the second cause of action. Plaintiffs did not avail themselves of the privilege to serve an amended complaint but obtained a stay pending appeal.

Plaintiffs' alleged claim arises out of the reorganization of the Alton Railroad Company which was declared a bankrupt in 1942 in the United States District Court for the Northern District of Illinois; Kansas City, operated as part of the Alton system under a lease made in 1878, was also declared a bankrupt in the same courts on May 7, 1943. As a result of the Alton reorganization, the Alton system was acquired by Gulf, Mobile and Ohio Railroad Company (hereinafter " Gulf "); and one of the provisions of the reorganization plan was

leasing Kansas City to Gulf and exchanging the 6% guaranteed preferred stock of Kansas City, owned among others by plaintiffs, for new 4½% Kansas City bonds guaranteed by Gulf. On the basis of two letters dated May 25, 1945, annexed to the complaint as Exhibits A and B, plaintiffs contend that defendants were required to assign the lease of Kansas City to Burlington and Burlington was obligated to become guarantor of the new 4½% Kansas City bonds; and, if it had, plaintiffs allege on information and belief that the bonds would have had more value; and that increased value (lost, plaintiffs claim, as result of defendants' breach of the claimed written contract), plaintiffs here demand as money damages.

To recover on either of the two pleaded causes of action, plaintiffs must establish their basic claim that the letters annexed to the complaint formed a complete, definitive and binding contract. The documents are before us. We think Special Term correctly held that the letters on their face did not constitute such a contract, but were at the most a proposed program or agreement to agree in the future on certain essential terms expressly left for further negotiations and dependent on contingencies that concededly never occurred. By the express language of the letters, vitally essential terms were "to be agreed upon". When, as to essential terms of a contract there has been no definite agreement but only an agreement to agree in the future, there is no contract and no one is obliged to carry "it" out in good faith; for there is no definitive "it" to carry out (*Mayer* v. *McCreery,* 119 N. Y. 434, 438; *Petze* v. *Morse Dry Dock & Repair Co.,* 125 App. Div. 267 [2d Dept.], affd. 195 N. Y. 584).

Shortly after the date of the letters relied on of May 25, 1945, and while the proposed Alton plan of reorganization was pending before the Interstate Commerce Commission, the Atchison, Topeka and Santa Fe Railroad Company (hereinafter "Santa Fe") on notice to plaintiff committee made to the Interstate Commerce Commission with Burlington on June 24, 1946, a joint application to have Santa Fe become a joint lessee with Burlington of the Kansas City line and joint guarantor of the new Kansas City bonds. Plaintiff Washburn in his affidavit herein admits notice was given to his committee and states "the stockholders' Committee made no objection" to the application. That joint application filed with the Interstate Commerce Commission on June 24, 1946, was not denied by the commission until July 6, 1948. This is one of the many facts in the record showing drastic changes in the state of

facts between 1945 when the letters were written and 1949 when the Interstate Commerce Commission granted Burlington's later application. These facts show nonfulfillment of material and vital contingencies fulfillment of which were conditions precedent before Burlington was to become a guarantor.

The 1945 proposed program contemplated that Burlington was not to give any guarantee unless it received (1) lease of the Kansas City property; (2) ownership of Kansas City stock; and (3) management and control of the line. Concededly, Burlington never received any of these things. What Burlington finally got on the application later approved by the Interstate Commerce Commission on July 6, 1949, was something entirely different, viz., the right to acquire from Gulf trackage rights for through-freight but under Gulf operation and control. For these trackage rights, Burlington paid and still pays a rental which has been determined to be " fair and reasonable " by the Interstate Commerce Commission after proceedings with open hearings before the commission in which plaintiff trustees intervened and opposed the application. In these proceedings, referring to objections by plaintiff trustees, the commission in its report held " that the position of the bondholders [plaintiffs and others similarly situated] will be strengthened by the transaction " by reason of " Important permanent improvements " and by reason of " provisions in the trackage contract " between Gulf and Burlington providing for payment by Burlington of one half of the interest on the principal amount of the bonds originally outstanding, and the assignment by Gulf of such payment and all other rental payments to the mortgage trustee as additional security for the bonds. The commission also found that the transaction would enable Burlington to render more efficient service, and was " of substantial public benefit "; that it was " mutually advantageous to both the applicant [Burlington] and the Gulf, Mobile & Ohio "; that " the rental proposed for use of the joint line is fair and reasonable "; that the terms and conditions " are just and reasonable "; and that the transaction will be " consistent with the public interest." An appropriate commission order was duly entered on the Interstate Commerce Commission findings July 6, 1949, and remains effective and unchanged.

This record also shows that the Kansas City stockholders as a class voted their approval of the Alton plan and exchanged the stock for the new Kansas City bonds, not in reliance on the May 25, 1945, letters or program of which they had as a

class concededly no knowledge. Indeed, plaintiff committee wrote a circular letter on July 25, 1946, to Kansas City stockholders urging them to approve the Alton plan with Gulf '' as your lessee and guarantor '' and made no mention whatever of any guarantee by Burlington or any reference whatever to the letters of May 25, 1945.

Defendants' brief alleges, and plaintiffs' reply brief does not deny, that at Special Term it was stipulated that if the court interpreted the second cause of action as one for unjust enrichment, instead of fraud, the court might consider defendants' cross motion for judgment on the pleadings dismissing that cause of action, as a cross motion for summary judgment. On the stipulation, it may be now so considered. Special Term properly held that there was no merit to the second cause of action either on the theory of fraud or unjust enrichment. Demonstrably no proper allegations of and no showing of fraud were either made or established. Plaintiffs on this appeal have abandoned the claim of fraud and now rely on claimed unjust enrichment. However, in their second cause of action plaintiffs do not seek restitution or the return of the stock which they exchanged for the bonds, but only damages. As above indicated, under the plan of reorganization the new $4\frac{1}{2}\%$ Kansas City bonds were issued in exchange for the 6% preferred stock and the stockholders were also paid all stock dividends of the bankrupt Kansas City that had been in arrears for some years. After the reorganization, Gulf acquired all of the Kansas City properties and assumed the obligations as primary obligor in respect to the principal and interest on the Kansas City bonds; this was approved by the Interstate Commerce Commission. As a result, the Kansas City stockholders have received securities backed by the direct obligations of Gulf and the assignment to the mortgage trustee by Burlington of one half of the interest and all of Burlington's rental payments under the trackage agreement. For these reasons, among others, the Interstate Commerce Commission expressly held that the plan which it approved over plaintiffs' objections '' strengthened '' the position of the bondholders. At no time have plaintiffs or any former Kansas City stockholders offered to return the bonds which were issued for the old Kansas City preferred stock or return the arrearages in dividends with interest which they admittedly received as part of the exchange of stock for bonds; and obviously plaintiffs cannot now make restitution on the part of all Kansas City stockholders of the interest arrears that have been paid to

them. Special Term properly held there was no merit to the second cause of action on either theory; on the record before us there is no factual basis for the second cause of action either on the theory of fraud or unjust enrichment and plaintiffs should not be permitted to replead.

Finally, the complaint alleges that Burlington is a corporation organized and existing under the laws of the State of Illinois; defendants in their brief pointed out that under the laws of Illinois, Burlington is prohibited from guaranteeing the bonds of another corporation unless it owns more than 50% of the capital stock of the other corporation (Ill. Rev. Stat., ch. 114, § 49b); and Burlington owns no such stock of Kansas City. Plaintiffs, in their reply brief, make no answer to this contention.

Despite first impressions of complexity, a study of this record, including the documentary evidence, shows that the basic issues are relatively simple, and that these plaintiffs have no cause of action against defendants or either of them for the only relief that they here claim, viz., a guarantee by Burlington and alleged damages for failure to give such guarantee.

On plaintiffs' appeal from (1) order dated April 19, 1951, denying plaintiffs' motion for summary judgment; and (2) order dated April 27, 1951, granting defendants' cross motion for summary judgment and judgment on the pleadings, the orders appealed from should be affirmed, with costs to defendants.

On defendants' cross appeal from that part of the order of April 27, 1951, which permitted plaintiffs to serve an amended complaint as to the second cause of action for alleged unjust enrichment, the order appealed from should be modified so as to deny leave to replead.

Order dated April 19, 1951, denying plaintiffs' motion for summary judgment affirmed. Order dated April 27, 1951, granting defendants' cross motion with leave to the plaintiffs to serve an amended complaint as to their second cause of action should be modified upon the law and the facts; and, on the stipulation at Special Term, defendants' cross motion as to the second cause of action is considered as one for summary judgment and said motion is granted dismissing complaint without leave to plaintiffs to replead; and, as so modified, said order is affirmed, with $20 costs and disbursements on said appeals to defendants.

PECK, P. J., and CALLAHAN, J. (dissenting in part). We think that the letter of May 25, 1945, appears on its face to be a contract, at least binding the defendants to a good faith effort to carry it out. There are triable issues as to whether under

the suggested complexities of the situation a firm agreement was made, and whether failure to carry out the program was excusable or a breach of good faith and the obligations undertaken. Determination of the issues should await trial.

In our opinion, therefore, the order denying plaintiffs' motion for summary judgment should be affirmed and the order granting defendants' cross motions for summary judgment and for judgment on the pleadings should be reversed and the motions denied.

GLENNON and COHN, JJ., concur with DORE, J.; PECK, P. J., and CALLAHAN, J., dissent in part in opinion.

Order dated April 19, 1951, denying plaintiffs' motion for summary judgment affirmed. Order dated April 27, 1951, granting defendants' cross motion with leave to the plaintiffs to serve an amended complaint as to their second cause of action should be modified upon the law and the facts; and, on the stipulation at Special Term, defendants' cross motion as to the second cause of action is considered as one for summary judgment and said motion is granted dismissing complaint without leave to plaintiffs to replead; and, as so modified, said order is affirmed, with $20 costs and disbursements on said appeals to defendants. Settle order on notice. [See *post*, pp. 655, 790.]