NATIONAL AIRLINES, INC., Plaintiff, *v.* PORT OF NEW YORK AUTHORITY et al., Defendants.

Supreme Court, Special Term, New York County, April 22, 1955.

*Roy M. Cohn* and *John M. Foley* for plaintiff.

*Sidney Goldstein, Daniel B. Goldberg, Joseph Lesser, Isobel Muirhead* and *Ralph W. Felstein* for defendants.

SCHREIBER, J.   National Airlines, Inc. (hereinafter referred to as "National") moves for a temporary injunction against

the Port of New York Authority (hereinafter referred to as " the Authority "), and the latter cross-moves for summary judgment dismissing the complaint.

National occupies certain space in the temporary terminal building at Idlewild Airport under a lease from the Authority, dated January 1, 1953, and expiring September 30, 1974. The lease gives National, in addition, the right to common use of the airport and of various facilities. The lease states that it is the Authority's intention to erect a permanent terminal building and related facilities at the airport (tit. V, 5.01) and it authorizes the Authority to terminate the lease " if the Authority tenders to the Airline a Lease Supplement covering the use and occupancy of comparable space in the Permanent Terminal Building " (tit. XV, 15.02). National is, however, given no enforcible right to comparable space, or any space, in the permanent terminal building, when erected, except as a condition of a termination of its lease by the Authority. The closest the lease comes to giving National a right to space in the permanent terminal building, independent of a termination of its lease by the Authority, is the provision in section 5.02 that on completion of the permanent terminal building the Authority " shall lease * * * and the Airline shall hire * * * such space in the Permanent Terminal Building *as may at the time be mutually agreed upon by the parties to this lease (which space need not be comparable space as defined in Section 15.02)* on such terms and conditions (other than rent which shall be fixed in accordance with Section 5.03) *as may at the time be mutually agreed to by the parties to this lease* " (italics supplied). The section continues with a provision that nothing in section 5.02 shall be construed to limit the Authority's right " *in its sole discretion* " to terminate leases of space in the temporary terminal building by tendering leases of comparable space in the permanent terminal building.

It is thus clear that, except as a condition of termination of its lease by the Port Authority, National is entitled to space in the permanent terminal building only if the Authority and National are able to agree upon the space to be occupied by National and upon the terms and conditions of the lease, other than rent. An agreement to agree in the future upon vital and essential terms is, in law, no agreement at all (*Slater* v. *Gulf, Mobile & Ohio R. R. Co.,* 279 App. Div. 166, 169, affd. 304 N. Y. 636).

Alleging that the Authority, at a meeting held by it on February 17, 1955, " authorized the demolition and abandonment

of the temporary terminal " and that the Authority failed and refused to tender to National a lease supplement of "comparable space " in the permanent terminal building, the erection of which was authorized at the same meeting of the Authority, National commenced the present action for a declaratory judgment. It seeks a judicial declaration as to (1) its right to space and facilities in the permanent terminal building, (2) as to its right to facilities presently available in the temporary terminal building until a lease of " comparable space " in the permanent terminal building has been tendered to it, and (3) as to its right to receive certain notices of changes in proposed plans for development of the airport and of contemplated construction in connection therewith.

National's claim, in its amended complaint, that it is entitled to be tendered a lease to " comparable " space in the permanent terminal is based solely upon the allegation that the Authority, at its February 17th meeting, authorized the demolition and abandonment of the temporary terminal. National is obviously proceeding upon the theory that the Authority has thereby authorized the termination of National's present lease.

In support of its motion for summary judgment dismissing the amended complaint, the Authority submits a copy of the minutes of its meeting of February 17, 1955. The resolutions adopted at said meeting contain no authorization whatever for the demolition or abandonment of the temporary terminal building or for the termination of National's present lease of space and facilities in that building.

To remove any possible doubt on the subject, the Authority, at its meeting of March 17, 1955, after the commencement of the present action, adopted resolutions for the express purpose of dispelling National's " misapprehension " that the action authorized on February 17, 1955, (1) threatened or endangered National's right to quiet possession and enjoyment of the space leased to it in the temporary terminal building, or (2) authorized abandonment or demolition of that building prior to September 30, 1974, in the absence of a tender of a lease for comparable space. The resolution adopted at the meeting of March 17th, (1) expressly affirmed that National " is entitled to the use and occupancy and quiet enjoyment of the premises shown on the aforesaid Exhibit 30 attached to the Agreement and Lease between the Port Authority and National Airlines, dated as of January 1, 1953 "; (2) further affirmed that the Port Authority " by its action of February 17, 1955 * * * did not author-

ize, nor did it even purport to authorize the termination of said lease of National Airlines nor did it authorize or direct or even purport to authorize or direct that said Temporary Terminal Building be demolished or abandoned ''; (3) resolved that the rights of National in the temporary terminal building, under the lease, would not be interfered with or encroached upon; and (4) resolved that the plans for construction of roadways, parking facilities, landscaping, taxiways and utilities, and for a runway extension and a connecting taxiway would be prepared so as not to '' interfere with or encroach upon the rights of National Airlines in said Temporary Terminal Building.''

In view of the fact that the resolutions adopted at the February 17th meeting of the Authority did not authorize or purport to authorize the demolition and abandonment of the temporary terminal building, and in view, further, of the fact that any possibility of interpreting the February resolutions as indirectly authorizing the demolition or abandonment of the temporary terminal building has been dispelled in the clear and explicit resolutions adopted at the March 17th meeting of the Authority, there is no factual basis for National's claim that it is entitled to a judgment declaring that it has the right to '' comparable space '' in the permanent terminal building. These resolutions of a responsible government agency, affirming that it has not authorized and has no intention of authorizing a violation of National's rights under its lease, preclude the court from holding that a factual issue exists as to whether the Authority has authorized the demolition and abandonment of the temporary terminal building and the consequent termination of National's lease of space and facilities therein. National apparently interprets certain statements by employees of the Authority as indicating that the latter does intend to tear down the temporary terminal building prior to the expiration date of its lease. The Authority claims that the statements in question contemplated the *voluntary* removal of National and all other lessees from the temporary terminal building prior to the demolition of that structure. However that may be, the employees had no apparent or actual authority to bind the Authority itself. Only the twelve commissioners who constitute the Authority could legally determine its intentions and authorize its conduct of its affairs. The commissioners have definitely declared, by formal resolution, that National's rights under its existing lease will not be terminated by the Authority. This resolution is controlling here.

It does not necessarily follow, however, that the amended complaint must be dismissed. Although it is clear that National cannot succeed upon the trial insofar as it claims the right to comparable space in the permanent terminal, it is entitled to a judicial declaration as to what rights it possesses to facilities presently used by it in common with other airlines in the temporary terminal building. It seeks such a declaration in its further prayer for relief: " (4) whether the plaintiff is entitled to the common use of said airport and all the facilities presently available in the Temporary Terminal premises including but not limited to Public Aircraft Facilities, public lobbies, public passenger lounges, public waiting rooms, public hallways, public rest rooms and other public passenger conveniences and facilities." Although the resolutions of the Authority make it clear that it does not intend to interfere with National's possession and quiet enjoyment of the space exclusively occupied by it in the temporary terminal building, the resolutions do not state that the Authority has no intention, during the duration of National's lease, to interfere with any of the facilities in that building which are presently enjoyed by National in common with other lessee airlines. That this omission is not inadvertent is clear from the brief submitted on behalf of the Authority. At page 27 of that brief it is stated that plaintiff is entitled " *at the present time* " to the use of " all the facilities presently available in the temporary terminal premises including the areas in the building which plaintiff is entitled to use in common with other tenants." The brief continues, however, with an expression of hope that " *in the future,* many, if not all, of the present tenants * * * will voluntarily move to new permanent terminal facilities ", and then states that " if and when that occurs * * * it will be time to consider whether any of the common areas of the Temporary Terminal Building may no longer be necessary to service the tenants who elect to remain, including plaintiff." The brief then declares that the Port Authority resolution of March 17, 1955, assures to plaintiff, for the balance of its term, the quiet enjoyment and occupancy of the premises demised to it for its exclusive use and also " of all the public lobbies, hallways, lounges, etc., which service it as well as any other tenants who also so elect to remain." This sentence, in the light of the doubt expressed in the sentence immediately preceding it as to facilities " no longer necessary to service the tenants who elect to remain ", refers only to plaintiff's enjoyment of such lobbies, hallways, lounges, etc., as are necessary

to service the space demised to plaintiff, and not to all such lobbies, hallways, lounges, etc., as are presently maintained in the temporary terminal building while it is occupied by plaintiff and eight other airlines. This interpretation is confirmed by the following sentence, which concludes the brief's discussion of the subject: " On the basis of the facts and law agreed to by both parties, we respectfully submit that no justiciable controversy exists between them as to the existence or extent of plaintiff's acknowledged right to remain in the occupancy and enjoyment of the space demised for its exclusive use in the Temporary Terminal Building and such public areas and facilities *as are necessary* to service such exclusive area, so long as plaintiff elects to remain therein " (italics supplied).

In the circumstances, there appears to be some basis for the apprehension expressed in National's reply brief that the Authority intends to carry out a threat attributed to one of its employees, that the temporary terminal building will be torn down around National, leaving only the space demised to it for its exclusive use and such of the present facilities for common use as the Authority may decide to be absolutely necessary for National's use of its exclusive space. As efforts are admittedly being made by the Authority, and will continue to be made, to induce the other airline lessees to move from the temporary terminal building, and as some of the airlines have already indicated an intention to do so by entering into memorandum agreements calling for their vacating the temporary terminal building, it is evident that it is quite probable that a number of airlines will leave the building, and that the Authority may then curtail those of the common facilities presently used by all the airlines in the building which the Authority will deem unnecessary to service National and any other airlines which may remain in the structure. In this situation, the court is of the opinion that a proper exercise of discretion requires that National be permitted to obtain a judicial declaration as to what common facilities in the temporary terminal building it is entitled to continue to enjoy if some or all of the other airline tenants vacate the building. Such a declaration may be extremely helpful to National in reaching a determination as to whether to remain in the temporary terminal building or accept such space as may be offered to it elsewhere in the airport by the Authority.

Since a good case for a declaratory judgment as to National's rights to common facilities in the temporary terminal building is made out, the motion to dismiss the amended complaint must

be denied. It is accordingly unnecessary at this time to consider whether there is any factual issue presented as to National's right to receive various notices which the Authority contends are being claimed prematurely, under the language of the lease, and which it states will be given to National at the times required by the provisions of the lease.

The cross motion for summary judgment dismissing the complaint is accordingly denied.

We turn now to National's motion for a temporary injunction. National seeks to restrain the Authority from allocating or leasing space at the airport; from vacating, abandoning or destroying the existing terminal and facilities; from interfering with its use and occupancy of the premises leased to it; from proceeding with contemplated changes in the master plan of the airport; from contracting for or constructing any part of the proposed terminal development, and from interfering with plaintiff's enjoyment of the premises leased to it.

To the extent that National seeks to enjoin the construction of the proposed new terminal and to restrain the Authority from allocating or leasing space in the proposed new development, the motion must be denied for, as already pointed out, National's only right is to remain in the premises demised to it and to enjoy whatever common facilities are included, expressly or impliedly, in its lease. It has no right to obtain space in the proposed new terminal or to prevent the construction thereof.

As to its claim that it has not received certain notices to which it is entitled under its lease, it is sufficient to point out that the provisions for the giving of such notices expressly state that the purpose of such notices is merely informative and " not to vest any rights in the Airline to interfere with any changes contemplated by the Authority " (§ 1.03) and " not to vest any rights in the Airlines " (§ 5.01). Furthermore, National has failed to establish clearly, as it is required to do in order to obtain a temporary injunction, that the Authority failed to serve it with notices which it should have received. The Authority contends that the notices required by section 1.03, as to contemplated changes in the master plan, were not required to be given until such time as it notified the administrator of civil aeronautics thereof (or, if practicable, at least sixty days prior thereto). No notice has yet been given to the administrator. The notices of contemplated construction of public aircraft facilities are required to be given at least sixty days prior to

the commencement of such construction. The Authority states that it has not authorized such a contract for such construction and has no intention to do so within the next sixty days. The notices required by section 5.01 must be given at least thirty days " in advance of the adoption of definitive plans and specifications " for a permanent terminal building. " The authority denies that the plans hitherto adopted constitute definitive plans and specifications " and it denies that it has adopted any " definitive plans and specifications " for the permanent terminal, and it likewise denies that any such plans and specifications have been submitted to it. The drawings and other documents considered by the Authority at the meeting of February 17, 1955, at which National claims the " definitive plans and specifications " were adopted, are annexed to the papers submitted by the Authority in opposition to the motion for injunctive relief. They tend to bear out the Authority's contention that they fall short of constituting " definitive plans and specifications " within the meaning of section 5.01. The merits of National's claim to the contrary are not sufficiently clear and free from doubt to warrant granting an injunction *pendente lite*.

Nor has National made out a good case for the granting of a temporary injunction restraining the Authority from interfering with its enjoyment of the facilities presently used in common by it and other airlines in the temporary terminal building.

This action can easily be reached for trial long before any of the airlines actually vacate the temporary terminal building to take up quarters in the new buildings to be constructed by or for them under the proposed plan for the permanent terminal. The leases for the new structures have not yet been authorized by the directors of the airlines or by the commissioners of the Authority. It is therefore clear that National is not confronted with the danger that the Authority will or may curtail any of the common facilities in the temporary terminal building before the trial of this action. A declaration by the trial court as to National's rights in respect of said common facilities will adequately protect its rights, and there is no need for a preliminary injunction as to this aspect of the case.

The motion for an injunction *pendente lite* is denied.

(Motion for leave to reargue, June 28, 1955.)

Motion for leave to reargue is denied. The only defendant to be restrained is the Port of New York Authority.